UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI TECH, INC.,
a Florida corporation,

    Plaintiff,

v.

                                          Case No. :

JANLERT PEREZ,
an individual,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Miami Tech, Inc. ("Plaintiff" or "Miami Tech"), sues Defendant, Janlert Perez ("Defendant" or "Perez") and alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that United States Patent No. 8,348,071 (the "'071 Patent") issued to Janlert Perez is invalid due to inequitable conduct committed by or on behalf of Perez during the revival of the underlying patent application giving rise to the '071 Patent.

## THE PARTIES

2. Miami Tech is a Florida corporation with its principal place of business in this District at 3611 NW 74th Street, Miami, FL 33147. Miami Tech manufactured, distributed and sold an adjustable air handler stand and filter rack (the "Product").

3. Upon information and belief, Perez is *sui juris* and resides in this District at 4840 NW 196th Terrace, Miami Gardens, FL 33055.

1

4. Non-party Albert Bordas, Esq. ("Bordas") is patent counsel to Perez. Bordas' law firm, Albert Bordas, P.A., is located at 5975 Sunset Drive, Suite 607, Miami, FL 33143.

## JURISDICTION AND VENUE

5. These claims arise under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Administrative Procedures Act, 5 U.S.C. § 706.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

7. This Court has personal jurisdiction over Perez because he resides in this District, transacts substantial and not isolated business in this District, and has otherwise established contacts with this District making the exercise of personal jurisdiction proper.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to this action have occurred and continue to occur in this District.

## STATEMENT OF THE CASE

9. Upon information and belief, Perez is the sole inventor of the '071 Patent issued on January 8, 2013. A copy of the '071 Patent is attached hereto as Exhibit "A."

### The Patent Application And Its Prior Abandonment

10. The records of the United States Patent and Trademark Office ("USPTO") indicate that the patent application giving rise to the '071 Patent was filed by Mr. Luca D'Ottone ("Perez's Agent") on January 3, 2008 and assigned application serial number 11/968,791 (the "Application").

2

11. The Application was filed with a "Non-Publication Request" resulting in the Application being held in complete secrecy until the date upon which the '071 Patent issued.

12. Because the Application was held in complete secrecy until the issuance of the '071 Patent, Miami Tech did not have knowledge of the contents of the Application until the issuance of the '071 Patent.

13. The USPTO records indicate that on April 15, 2010 the USPTO issued a non-final office action (the "Office Action," attached as Exhibit "B").

14. The USPTO provided the Office Action by regular mail and e-mail to Perez's Agent on April 15, 2010.

15. Upon information and belief, Perez's Agent in turn provided a copy of the Office Action to Perez via e-mail on the same day (see page 3 of the First Petition, Exhibit E, discussed further below).

16. The Office Action indicated that a response was to be filed by Perez no later than three (3) months from its mailing date or by July 15, 2010. The Office Action also warned Perez that unless a response is filed by October 15, 2010, the Application would become abandoned.

17. Upon information and belief, because Perez's Agent and Perez received a copy of the Office Action on April 15, 2010, Perez's Agent and Perez were aware of the contents of the Office Action and the due date to respond to the Office Action in order to avoid the abandonment of the Application.

18. However, no response to the Office Action was filed by Perez or Perez's Agent by October 15, 2010.

3

19. Because of the failure to file a response to the Office Action, the Application became abandoned on October 16, 2010.

20. On October 26, 2010, or ten days after the Application became abandoned, Perez's Agent conferred with Perez (see page 3 of the First Petition, Exhibit E, discussed further below). Notwithstanding the fact that the Application was abandoned, Perez's Agent informed Perez that he reviewed the Office Action, that the Application was rejected based upon the "Gonzalez" patent, and Perez's Agent suggested Perez file a new patent application due to the challenges raised by the "Gonzalez" patent (id.).

21. Despite the advice of Perez's Agent, Perez did not file a new application and a formal notice of abandonment was issued on December 8, 2010 (the "Notice of Abandonment", attached as Exhibit "C").

22. A copy of the Notice of Abandonment was mailed and e-mailed to Perez's Agent on December 8, 2010.

23. The Notice of Abandonment contained a warning that "petitions to revive . . . should be promptly filed . . ."

24. Notwithstanding the receipt of the Notice of Abandonment and the warning contained therein, from December 8, 2010 through May 3, 2011, nothing was filed by or on behalf of Perez with the USPTO.

25. On May 4, 2011, almost seven months after the Application went abandoned, and five months after the issuance of the Notice of Abandonment, Bordas filed a power of attorney with the USPTO signed by Perez and designating Bordas as his attorney with legal authority to prosecute the Application with the USPTO (the "Power of Attorney", attached as Exhibit "D").

4

26. Interestingly, a day after Bordas filed the Power of Attorney, on May 5, 2011, Perez's Agent conferred with Perez and suggested that Perez work directly with Bordas (see page 3 of the First Petition, Exhibit E, discussed further below). On May 9, 2011, Perez's Agent again conferred with Perez and told Perez to work directly with Bordas in anticipation of prospective litigation against, upon information and belief, Miami Tech – almost one year and nine months before Bordas first made Miami Tech aware of the '071 Patent (id.).

27. Yet, from May 4, 2011 until October 6, 2011, Bordas failed to file any paper on behalf of Perez with the USPTO.

28. Only on October 7, 2011, nearly one year after the Application became abandoned did Bordas on behalf of Perez file a petition to revive the Application for unavoidable abandonment (the "First Petition", attached as Exhibit "E").

29. The First Petition contained a chronology of the communications between Perez and Perez's Agent. The chronology was preceded by an introductory statement stating that several e-mails were sent by Perez to Perez's Agent between the date of the Office Action and the date of abandonment of the Application. Contradictorily, however, the chronology indicated that no e-mails were sent from Perez to Perez's Agent between April 15, 2010 and October 16, 2010.

30. Nevertheless, the First Petition was denied by the USPTO on November 22, 2011 (the "Denial", Exhibit "F"). In the Denial, the USPTO concluded that the abandonment of the Application was not unavoidable.

31. The Denial specifically cautioned that a petition for unintentional abandonment could not be filed in the circumstance where the petitioner intentionally delayed the filing of a petition for unintentional abandonment.

32. Despite the warning of the USPTO in the Denial, on December 19, 2011, Bordas signed and filed on behalf of Perez a petition under penalty of perjury to revive the Application based upon "unintentional abandonment" under 37 C.F.R. 1.137(b) (the "Second Petition", attached as Exhibit "G").

33. The Second Petition contained the same chronology set forth in the First Petition. Again, the chronology was preceded by an introductory statement stating that several e-mails were sent by Perez to Perez's Agent between the date of the Office Action and the date of abandonment of the Application. However, as in the case of the First Petition, the chronology of the Second Petition plainly showed that no e-mails were sent from Perez to Perez's Agent between April 15, 2010 and October 16, 2010.

34. The Second Petition also contained a statement from Perez that "the abandonment of [his] application was unintentional" and that he "has acted diligently to revive his patent application" (Second Petition, p. 5).

35. As such, Perez made a representation that the abandonment of the Application was unintentional and included in support thereof a material misrepresentation of fact – that several e-mails were sent by Perez to Perez's Agent between the date of the Office Action until the date of abandonment of the Application.

36. Even still, per USPTO practice, the Second Petition was automatically granted *pro forma* by the USPTO on the day it was filed.

37. As a consequence and in light of the facts listed above, Perez and Bordas committed inequitable conduct in the filing and submission of the Second Petition to revive the Application because: (a) the Second Petition was highly material in the issuance of the '071 Patent; (b) the statement by Perez in the Second Petition that the abandonment was unintentional amounted to an affirmative misrepresentation of a material fact and was false; (c) the introductory statement made by Perez in the Second Petition that several emails were sent from Perez to Perez's Agent between the date of the Office Action and the date of abandonment of the Application was false and amounted to an affirmative misrepresentation of a material fact; (d) and the Second Petition and the affirmative misrepresentations were made with the intent to deceive the USPTO and in order to have the USPTO improperly grant revival of the Application.

38. The revival resulting from the Second Petition is a direct result of Perez's inequitable conduct before the USPTO.

38. The revival resulting from the Second Petition is a direct result of Bordas' inequitable conduct before the USPTO.

39. Therefore, the '071 Patent is invalid as the underlying Application was abandoned and improperly revived through inequitable conduct with intent to deceive.

**The Presence of a Case or Controversy Given Perez's Threats Against Miami Tech**

40. Almost two months after the '071 Patent issued, on February 28, 2013, Bordas, acting as Perez's attorney, sent a letter to Miami Tech claiming that the Product infringed the '071 Patent (the "Letter", attached as Exhibit "H").

41. Because of the secrecy associated with the Application's Non-Publication Request, Miami Tech only first became aware of the existence of the '071 Patent upon receipt of the Letter.

42. In spite of the Non-Publication Request and the Application's secrecy during prosecution, in the Letter, Perez nonetheless accused Miami Tech of willful infringement.

43. The Letter concluded with a demand that Miami Tech "immediately cease and desist from making, using, offering to sell, or selling" the Product.

44. Miami Tech responded and vigorously contested the allegations made by Perez in the Letter. Miami Tech's non-infringement position is based in part on the invalidity of the '071 Patent given its abandonment and the inequitable conduct demonstrated by Perez and Bordas in petitioning to revive the Application.

45. Immediately, as a result of Perez's infringement threats, and out of an abundance of caution, Miami Tech stopped the manufacture and commercial distribution of the Product.

46. During the period of time from the issuance of the '071 Patent to the date of Miami Tech's withdrawal of the Product from the market, total sales amounted to $3,950.00. Miami Tech informed Bordas of the *de minimis* sales of the Product and the discontinuance of the sale of the Product since the receipt of the Letter.

47. Unhappy with Miami Tech's response, on April 24, 2013, Bordas again demanded Miami Tech to comply with Perez's demands and issued an ultimatum, claiming that Perez had authorized the filing of an infringement lawsuit against Miami Tech unless "a reasonably monetary offer" was made.

48. The Letter and Bordas' subsequent communications have placed Miami Tech in an immediate apprehension of an infringement lawsuit. This, as well as the injury created by Miami Tech's withdrawal of its Product from commercial distribution have created a justiciable controversy concerning the validity and enforceability of the '071 Patent and its enforceability.

## COUNT I
## Declaratory Judgment of Invalidity and Unenforceability of United States Patent No. 8,348,071
### (Inequitable Conduct in the Filing of the Petition for Revival)

49. Miami Tech re-alleges and incorporates by reference paragraphs 1 to 53.

50. Pursuant to 28 U.S.C. § 2201, this Court has subject matter jurisdiction to declare the rights and legal relations of parties to an active controversy.

51. There is an actual, present and existing dispute between the parties concerning the validity and enforceability of the '071 Patent.

52. Perez and Bordas committed inequitable conduct in the filing and submission of the Second Petition to revive the Application thereby rendering the '071 Patent invalid and unenforceable.

53. Because the Application would have never matured into the '071 Patent without the filing and granting of the Second Petition, the Second Petition was highly material in the subsequent issuance of the '071 Patent.

54. Perez and Bordas on behalf of Perez committed inequitable conduct in the filing and submission of the Second Petition because: (a) the statement by Perez in the Second Petition that the abandonment was unintentional amounted to an affirmative misrepresentation of a material fact and was false; (b) the introductory statement made by Perez in the Second Petition that several emails were sent from Perez to Perez's Agent

9

between the date of the Office Action and the date of abandonment was false and amounted to an affirmative misrepresentation of a material fact.

55. Indeed, upon information and belief, the statement made by Perez and Bordas on behalf of Perez in the Second Petition that the abandonment was unintentional was false because Perez and Bordas knew the abandonment was caused by deliberate choices of action made during the prosecution of the Application.

56. First, upon information and belief, the abandonment was not unintentional because Perez received a copy of the Office Action on April 15, 2010, knew the due date to file a response, and knowingly permitted the Application to go abandoned by failing to file a response to the Office Action within the period set for such response.

57. Further, upon information and belief, the abandonment was not unintentional because Perez intentionally delayed retaining Bordas for seven months after the Application went abandoned (for five months from when Perez received the formal Notice of Abandonment).

58. Even further, upon information and belief, the abandonment was not unintentional because Perez and Bordas on behalf of Perez intentionally delayed the filing of the First Petition. Indeed, upon information and belief, Bordas waited five months after being retained to file the First Petition even though Bordas knew the Application had been abandoned for nearly a year.

59. Yet further, the abandonment was not unintentional because, in the Denial of the First Petition, Perez and Bordas were specifically cautioned that a petition for unintentional abandonment could not be filed in the circumstance where the petitioner intentionally delayed the filing of a petition for unintentional delay. Still, upon

information and belief, Perez and Bordas on behalf of Perez filed the Second Petition while knowing that they intentionally delayed the filing of the Second Petition.

60. Even yet further, the abandonment was not unintentional because the communication of May 9, 2011 from Perez's Agent to Perez strongly suggests that the only reason why Perez sought to revive the Application was solely for the purpose of prospective litigation against Miami Tech; otherwise, Perez would have allowed the Application to remain abandoned.

61. Finally, upon information and belief, Perez and Bordas made an affirmative misrepresentation with the intent to deceive the USPTO in the Second Petition in the introductory statement preceding the chronology in which Perez and Bordas falsely stated that several e-mails were sent by Perez to Perez's Agent between the date of the Office Action and the date of abandonment of the Application.

62. Therefore, Perez and Bordas on behalf of Perez committed inequitable conduct in the filing and submission of the Second Petition because: (a) the Second Petition was highly material in the issuance of the '071 Patent; (b) the statement by Perez in the Second Petition that the abandonment was unintentional amounted to an affirmative misrepresentation of a material fact and was false; (c) the introductory statement made by Perez in the Second Petition that several e-mails were sent from Perez to Perez's Agent between the date of the Office Action and the date of abandonment was false and amounted to an affirmative misrepresentation of a material fact; (d) and the Second Petition and affirmative misrepresentations were made with the intent to deceive the USPTO and in order to have the USPTO improperly grant revival of the Application.

11

63. The revival of the Application by the USPTO is a direct result of Perez's and Bordas' inequitable conduct in filing the Second Petition.

64. Miami Tech is therefore entitled to a declaratory judgment that the '071 Patent is unenforceable due to inequitable conduct in the revival of the Application before the USPTO.

## PRAYER FOR RELIEF

WHEREFORE, Miami Tech respectfully requests that this Court enter judgment in its favor and against Perez:

(a) Declaring the '071 Patent as invalid and unenforceable for inequitable conduct under 35 U.S.C. § 27 and other applicable provisions of Title 35, United States Code;

(b) Awarding Miami Tech such other and further relief as the Court deems just, proper and equitable, including its attorney's fees and costs associated with bringing this action.

Dated: May 9, 2013

Respectfully submitted,

CAREY RODRIGUEZ
GREENBERG O'KEEFE, LLP

By: /s/ Albert B. Maggio, Jr.
Albert B. Maggio, Jr., P.A.
amaggio@crgolaw.com
Florida Bar Number 69847
7900 Glades Road, Suite 520
Boca Raton, FL 33434
Telephone: (561) 922-3845
Facsimile: (561) 244-1062

*Attorneys for Plaintiff Miami Tech Inc.*